# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 17-cv-7519 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| KEITH M. PICHELMANN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Petitioner's Section 2255 motion to vacate, set aside, or correct sentence [1] is respectfully denied.

**I.   Background**

By way of background, on September 23, 2013, Petitioner was sentenced in the United States District Court for the Southern District of Illinois to a term of 70 months' imprisonment and 36 months of supervised release for a narcotics offense. On March 22, 2016, this Court assumed jurisdiction over Petitioner's continuing supervision, the history of which is set forth in detail on the docket of Petitioner's criminal case, No. 16-cr-191. Less than three months later, the Probation Officer filed a special report [Case No. 16-cr-191, Dkt. 2] reporting eight alleged violations of the conditions of Petitioner's supervision and requesting an arrest warrant because Petitioner's whereabouts were unknown. About a month later, Petitioner appeared in court after his arrest by the U.S. Marshals on the outstanding warrant. Since that initial court appearance, Petitioner has appeared in this Court on more than half a dozen occasions—on July 25, 2016, August 12, 2016, August 24, 2016, March 28, 2017, August 9, 2017, December 12, 2017, and

December 19, 2017[1]—in connection with the Probation Officer's and the Court's efforts to deal with the difficulties that he had in complying with the terms of supervision, which culminated in the revocation of his supervised release, another term of incarceration, and finally this Section 2255 action.[2]

## II. Legal Standard

Section 2255 affords relief from "sentence[s] * * * imposed in violation of the laws of the United States." However, as Petitioner recognizes, not "every asserted error of law can be raised on a § 2255 motion." *Davis v. United States*, 417 U.S. 333, 346 (1974). In considering whether Section 2255 may afford an avenue for sentencing relief, a court must consider whether the "claimed error of law" constitutes a "fundamental defect" resulting in a "miscarriage of justice" and "present[ing] exceptional circumstances where the need for habeas corpus relief is apparent." *Id*. (quotation marks and citation omitted). Petitioner rests his claim for relief here on his perception that the Court's decision to impose a 24-month custodial sentence in this case rested on a flawed factual premise—that such a sentence would qualify Petitioner for consideration for the Residential Drug Abuse Program ("RDAP")—and a flawed legal premise—that the Court could increase the term of imprisonment upon revocation of supervised release in order to ensure that the individual in question would qualify for RDAP consideration

---

[1] In addition, the Court convened status hearings on November 30, 2016 and January 10, 2017 at which Petitioner's counsel, the Government, and the Probation Officer were present, but at which Petitioner himself was unable to appear, either because he was not in regular contact with the Probation Officer or was in state custody following another arrest.

[2] In the interest of completeness, the Court has reviewed transcripts of every court proceeding since Petitioner's supervision was transferred to this district in 2016, which include the dates listed above, as well as June 22, 2016 (the date for initial presentment of the first violation report) and July 18, 2016 (Petitioner's initial appearance after the violation report). Some of these proceedings are already in the record and have been attached to the parties' submissions. To complete the record, the Court Reporter will place all of transcripts on the docket as soon as practicable.

and in fact did so in this case. As explained below, the Court accepts the first argument, but rejects the second. And without both, Petitioner is not entitled to relief.

**III. Analysis**

Although the Court did not issue a judgment order [Case No. 16-cr-191, Dkt. 27] revoking Petitioner's release and imposing a sentence of 24 months in custody followed by 24 additional months of supervision until April 19, 2017, that decision can only be fully understood in the context of the ten months of court proceedings leading up to that order. Starting with the first violation report, the Probation Officer consistently recommended both revocation and a lengthy custodial sentence at or above the high end of the advisory Guideline range of 8 to 14 months. [See Case No. 16-cr-191, Dkt. 2 (initial special report recommending 14 months in custody); Case No. 16-cr-191, Dkt. 19 (second special report recommending 24 months in custody); see also Aug. 12, 2016 Tr. at 7 ("My recommendation remains custody at this time"); Mar. 28, 2017 Tr. at 8 (confirming recommendation of 24 months in custody and 24 months of supervised release).] She based that recommendation on the serious, repeated violations that had come to her attention, as well as the major instability in Petitioner's life and the danger to himself and others presented by his relapses into drug use, occasional belligerence, and tendency to go AWOL. She felt that a fairly lengthy placement in a stable environment would assist Petitioner in gaining control of his life and deterring further criminal, self-destructive, and anti-social behavior.

Although Petitioner readily admitted all of the alleged violations [July 25, 2016 Tr. at 1 ("Mr. Pichlemann agrees to all of the violations"); Aug. 12, 2016 Tr. at 1 ("Judge, substantially, Mr. Pichlemann would admit to the violations"); Mar. 28, 2017 Tr. at 4 ("he is not contesting the violations")], the Court did not revoke him immediately. With due respect for the Probation

Officer—who worked extremely hard to assist Petitioner—the Court resisted those recommendations for several months, preferring instead to offer Petitioner every opportunity to succeed without additional time in custody. At the same time, the Court stressed the need for Petitioner to do his best to take advantage of the few remaining non-custodial options, emphasizing that once those options were exhausted without gaining compliance with the conditions of supervision, the Court would have no choice but to impose a term of custody. [See Aug. 12, 2016 Tr. at 17, 25; Aug. 24, 2016 Tr. at 10.] The Court recognized the volatile mix of drug and alcohol use, domestic tension, and long-term mental health issues that Petitioner was facing. Yet, consistent with the Court's desire to use custody as a last resort, not a first one, the Court asked the Probation Officer to place Petitioner at the best available facilities that offered him a safe place to stay and the treatment that he needed.

Pursuant to the Court's direction, the Probation Officer obtained a placement for Petitioner that offered a safe and stable environment with drug and mental health treatment. The Court emphasized that it would take time and commitment on Petitioner's part to turn his situation around and noted its hope that the proposed course of treatment would amount to a "transplant," rather than a "band-aid," to which Petitioner replied, "Absolutely." [Aug. 24, 2016 Tr. at 15.] Things went reasonably well for a couple of weeks, but by November 30, 2016, the Probation Officer reported that Petitioner "has been in and out of potential programs that would have offered him excellent services, but for various reasons he gets removed from those programs." [Nov. 30, 2016 Tr. at 1.] Finally, right around the New Year holiday, Petitioner was arrested and detained by law enforcement in Winnebago County on charges of aggravated battery and resisting a peace officer. [Jan. 10, 2017 Tr. at 1.]

As of the date of the revocation hearing on March 28, 2017, the record reflected the Defendant's continued susceptibility to illegal drugs, including cocaine, marijuana, and heroin, as well as alcohol abuse. These substance abuse problems in turn fueled the domestic tensions that undermined Petitioner's attempts to maintain private living arrangements as well as Petitioner's inability to follow the rules of the treatment centers where the Probation Officer had found placements. And all of these unfortunate circumstances came to a head after Petitioner's altercation with law enforcement in Rockford that resulted in the state charges noted above. This pattern of self-destructive behavior despite every opportunity provided by the Probation Officer and the Court brought the Court to the end of the road for non-custodial options. Moreover, the Court became convinced by the Probation Officer's sadly prescient observations and recommendations that a lengthy period of custody was necessary to impress upon Petitioner the seriousness of his conduct, to provide just punishment for his repeated violations (11 in all as of the date of the revocation), to deter future violations, and to provide a safe and structured environment in which he could pull his life together.

At the revocation hearing, the Court specifically noted that it seldom imposes sentences above the advisory Guideline range—which in this instance was 8 to 14 months—but felt that the totality of the circumstances in this case justified the longer term of incarceration (24 months). Furthermore, cognizant that nobody present—not the Court, the Probation Office, the Government, defense counsel, nor Petitioner himself—wanted the Court to give up on Petitioner for purposes of supervision, the Court also imposed 24 months of supervision to follow. The hope was that Petitioner would use the time in custody to get clean and refocus his energies on making progress toward successful reintegration to society, after which time the Probation

Department could again make resources available to him that would help him succeed in the long run.

Once the Court decided on a custodial sentence, it was required to take into consideration all of the Section 3553(a) factors in shaping that sentence, including just punishment, deterrence, protection of the public, and any needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. As to that last category, both drug and mental health treatment obviously warranted the Court's attention. Importantly, although the Court cannot "lengthen[] a prison term in order to promote a criminal defendant's rehabilitation" (*Tapia v. United States*, 564 U.S. 319, 321 (2011)), some of the Section 3553(a) factors that the Court must consider at sentencing do touch on areas that might be described as "rehabilitative considerations." This process can appear to outsiders (like Petitioner)—and sometimes even to experienced lawyers, judges, and probation officers—like walking on a tightrope, but at least since *Tapia* was issued in 2011 the ground rules for navigating this difficult area of law have been reasonably clear.

In regard to the relationship between the length of the sentence and the component of it relating to drug treatment in this case, the Court noted both before, during, and after the revocation proceeding that it recognized (a) the legal prohibition on extending a term of incarceration to promote rehabilitation and (b) the fact that it could only recommend, not compel, the Bureau of Prisons to assign any defendant to the RDAP. For example, at the hearing held on August 12, 2016, the Court observed that "I am aware from my experience that not everybody I recommend for the RDAP actually gets it. They pick and choose." [Aug. 12, 2016 Tr. at 18.] The Court also noted, consistent with *Tapia*, that "the law says I can't be extra punitive in order to give him better treatment." *Id*. During the revocation proceeding on March 28, 2017, the

Court agreed to recommend the RDAP and to do so in the strongest possible terms, but again stressed "I know I make recommendations. I don't know what happens to the recommendations afterwards." [Mar. 28, 2017 Tr. at 22-23.] Similarly, in denying Petitioner's motion for reduction of sentence filed in his criminal case, the Court explained as follows:

> I understood when I gave the sentence that my recommendation about RDAP was a recommendation. It always is. I never have the ability to command anybody into the RDAP. And so I think [Petitioner] understood my hopes that he would get into the RDAP as part of the sentence, or a condition of the sentence, and it isn't and it never can be.

[Aug. 9, 2017 Tr. at 4.]

It is true, as Petitioner points out, that the Court was operating under an incorrect understanding about the prerequisites for RDAP eligibility. In this and every other case, the Court has used 24 months as a rule of thumb as the minimum term of imprisonment to trigger consideration of an RDAP recommendation. In other words, if the term is less than 24 months, the Court has assumed that an RDAP recommendation would be futile. As it turns out, Petitioner's memorandum makes a compelling case that a sentence of at least 27-28 months would have been necessary for him to qualify even to be considered for the RDAP, given the availability of good-time credit and prehearing-custody credit. This issue was raised at the revocation hearing, and in fact explored by the Probation Officer after the Court observed that Petitioner's eligibility for the RDAP was "pretty important here because I think it might defeat the whole purpose [of an RDAP recommendation] if he is ineligible." [Mar. 28, 2017 Tr. at 20.] After making a phone call, the Probation Officer opined that Petitioner's prior aggravated battery conviction would not disqualify him from consideration for the program. But neither the Probation Officer, nor the Court, nor counsel for either side recognized what Petitioner's memorandum appears to show—namely, that regardless of Petitioner's criminal history, the

7

length of time remaining on his sentence (24 months minus time served that would be credited) rendered him temporally ineligible for consideration in the RDAP. As Petitioner's brief notes, this is a common misunderstanding. See Alan Mills & J. Michael Henderson, *Federal Prison Handbook* § 3.30.3 (Revision 4, 2017) ("most judges, and the probation officers who advise them, are unaware that defendants sentenced to less than 27 months do not qualify for RDAP, regardless of the severity of their addictions").

That the Court proceeded under this misapprehension, however, does not necessarily mean either that (1) Defendant would have been accepted into the RDAP with a longer sentence[3] or (2) the Court's RDAP recommendation was meaningless. At a minimum, the recommendation calls to the attention of the Bureau of Prisons Petitioner's drug abuse problem, which may stimulate consideration of other useful programs for which he might be eligible. Nor—and most importantly for present purposes—does the Court's misapprehension about the prerequisites for RDAP eligibility entitle Petitioner to habeas relief. This is because the Court first settled on the appropriate term of incarceration—24 months, as recommended by the Probation Officer and the Government—and then addressed the other aspects of the sentencing, including whether to reimpose supervision, the length of the term of supervision, and other recommendations and requirements, including the RDAP and other drug and mental health treatment options. For all of the reasons noted above, that term of incarceration was warranted in the totality of the circumstances of this case and justified by the Section 3553(a) factors. It was not imposed in violation of 18 U.S.C. § 3582(a) or *Tapia*, nor was prior counsel ineffective in failing to challenge the legal and factual bases for the sentence imposed. To be sure, the Court can appreciate how Petitioner may have perceived a tighter link between the length of the

---

[3] In fact, the Court could not have imposed a longer sentence. Because Petitioner's underlying conviction was a Class C felony, the statutory maximum sentence upon revocation could not exceed 24 months. See 18 U.S.C. § 3583(b); see also [docket entry 2 in Case No. 16-cr-191 (original violation report)].

custodial sentence and the RDAP recommendation, as Petitioner's eligibility was discussed prominently at the hearing. But in the full context of the Court's consideration of Petitioner's supervised release violations over the ten-month period between the Probation Officer's initial violation report and the entry of a judgment of revocation, the sentence imposed was lawful and Petitioner is not entitled to relief under Section 2255.[4]

Finally, under the 2009 Amendments to Rule 11(a) of the Rules Governing § 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his Section 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[4] Given the Court's determination that Petitioner's substantive arguments do not warrant relief, the Court need not consider the Government's additional arguments that Petitioner has procedurally defaulted on all claims by failing to raise them on direct appeal. As the Government notes, at the revocation hearing, the Court did advise Petitioner of his appellate rights. [Mar. 28, 2017 Tr. at 30.] It is clear from the post-judgment history of this matter that Petitioner feels that prior counsel did not file an appeal that Petitioner wished to take. Upon realizing this circumstance, the Court convened multiple proceedings, requested the assignment of replacement counsel for Petitioner, and suggested the possibility that a Section 2255 petition might be the proper vehicle for Petitioner to present these issues for additional consideration.

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ on the merits of his claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

Dated: April 24, 2018

Robert M. Dow, Jr.
United States District Judge